UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

HARRY KEILHOLTZ,                    )
                                    )
            Petitioner,             )
                                    )
v.                                  )    Nos. 2:20-CV-176
                                    )         2:16-CR-030
UNITED STATES OF AMERICA,           )
                                    )
            Respondent.             )

## MEMORANDUM OPINION

Before the Court is Harry Keilholtz's ("Petitioner's") counseled motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Doc. 1; Criminal Docket ("Crim.") Doc. 437].[1] The United States has responded in opposition [Doc. 17], and Petitioner filed a reply [Doc. 26]. For the reasons below, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 437] will be **DENIED**.

## I.    BACKGROUND

In March 2016, Petitioner and eleven co-defendants were charged in a 23-count indictment pertaining to conspiracy and distribution of 50 grams or more of methamphetamine, along with related gun charges. [Crim. Doc. 3]. Petitioner was named in two counts. [*See id*.]. In November 2016, Petitioner was severed from the criminal case as all the other defendants had appeared before the Court, and Petitioner's whereabouts

---

[1] Document numbers not otherwise specified refer to the civil docket.

were unknown after he failed to turn himself in as directed. [Crim. Doc. 176]; *see also* [Doc. 1, pp. 7-8].

On March 13, 2019, Petitioner entered into a plea agreement with the government. [Crim. Doc. 382]. Petitioner agreed to plead guilty to the two counts for which he was charged in the Indictment – one count of conspiracy to distribute and to possess with the intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A); and one count of possessing a firearm in the furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). [*See id*.]. The Plea Agreement was signed by Petitioner and attorney Jerry J. Fabus, Jr. ("Attorney Fabus"). [*Id*.]. Two days later, Petitioner filed a motion to withdraw from the Plea Agreement [Crim. Doc. 385] which was granted by the Court [Crim. Doc. 386]. On April 8, 2019, Petitioner filed a Motion to Accept Plea Agreement that Defendant Previously Withdrew From [Crim. Doc. 388] which was also granted by the Court [Crim. Doc. 389]. An Amended Plea Agreement signed by Petitioner and Attorney Fabus was filed on April 16, 2019. [Crim. Doc. 392].

In his plea agreement, Petitioner acknowledged that beginning June 2014 and continuing to on or about March 8, 2016, in the Eastern District of Tennessee and elsewhere, Petitioner did knowingly, intentionally, and without authority, conspire with at least one other person to distribute and possess with the intent to distribute at least at least 1.5 kilograms but less than 4.5 kilograms of methamphetamine, a Schedule II controlled substance. Law enforcement agents conducted an extensive investigation into an organization trafficking in large quantities of methamphetamine in the Morristown,

Tennessee area. The investigation revealed that Petitioner was the source of supply for the organization in Stone Mountain, Georgia. One co-defendant from Tennessee, coordinated with Petitioner and connected other customers/dealers to him. In so doing, co-defendant, often caravanned with numerous co-conspirators to Georgia to obtain methamphetamine from Petitioner and then transport it back to the Eastern District of Tennessee for distribution. Petitioner supplied additional amounts of methamphetamine to co-defendant in exchange for co-defendant bringing more customers to him from Tennessee.

On February 12, 2016, a federal search warrant was executed at Petitioner's residence in Stone Mountain, Georgia. As law enforcement officers made entry inside Petitioner's residence, both Petitioner and co-defendant attempted to flee on foot out of the house. Petitioner was captured in the back yard. However, co-defendant managed to escape, although he dropped a package containing approximately 300 grams of methamphetamine in the back yard as he fled. The search of Petitioner's residence resulted in the seizure of additional quantities of methamphetamine and firearms including an AR-15 rifle with a magazine loaded with 44 rounds and one in the chamber, over a half kilogram of methamphetamine, over $5,100.00 in cash, digital scales, drug paraphernalia and assorted ammunition located in the office; an additional quantity of methamphetamine located in the bedroom; additional ammunition located in the living room; a glass container containing a substantial amount of methamphetamine located inside the kitchen oven; and a Sig Sauer 9mm pistol with a loaded magazine was. Overall, over one kilogram of methamphetamine was seized from Petitioner's residence resulting from the search.

Subsequently, Petitioner was fully advised of his Miranda rights, signed a written waiver, and agreed to speak with law enforcement. Petitioner admitted that he had been selling methamphetamine going back to approximately 2000 and had been previously convicted of trafficking methamphetamine. Petitioner moved to his current address in Stone Mountain in 2013, and during 2013 and 2014, Petitioner was selling about a pound of methamphetamine per week. In 2015, sales slowed down, and co-defendant became his best customer, coming to Georgia, on average, once or twice a week to obtain methamphetamine from Petitioner (usually about six ounces per trip). Petitioner agreed and stipulated that he was convicted of the felony offense of trafficking in methamphetamine on or about June 24, 2002 in the Superior Court of Dekalb County, Georgia; that the sentencing enhancement pursuant to U.S.S.G. §2D1.1(b)(12) applied in this case; and that he conspired to distribute and was accountable for at least 1.5 kilograms but not more than 4.5 kilograms of actual methamphetamine, a Schedule II controlled substance. [*Id*.]. Petitioner also acknowledged that the Court would impose sentencing. [*Id*.].

The Court conducted a change of plea hearing on April 16, 2019. Although there is no transcript of that hearing in the record the Court recalls conducting its standard colloquy with Petitioner and finding him competent to enter a guilty plea.[2] The Court confirmed that Petitioner indeed wished to plead guilty. The Court also confirmed: that Petitioner had been afforded ample time to discuss the case with his attorney; that he believed his attorney was

---

[2] Where, as here, the same judge considering the § 2255 motion also presided over the underlying proceedings, the judge may rely on his recollections of those proceedings. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013).

4

fully aware of all the facts on which the charges were based; that counsel had explained the meaning of any words Petitioner might not have understood; that counsel had explained the terms of Petitioner's plea agreement to him; that Petitioner was entering the plea agreement voluntarily and without coercion, and that Petitioner understood that his sentence would be determined *by the Court*.

The PSR calculated a total offense level of 37 and a criminal history category of II, resulting in an effective guideline range of 295 to 353 months, with a mandatory consecutive 60-month term of imprisonment for Count 20. [Crim. Doc. 400, ¶ 73]. The PSR also noted that had the United States filed a notice to seek enhancement and to establish prior conviction under 21 U.S.C. § 851, Petitioner would have been subject to a statutory minimum of 15 years' incarceration on Count One. [*Id*. at ¶ 75].

The government filed a notice of no objections to the PSR. [Crim. Doc. 401]. The government also filed a sentencing memorandum under seal wherein it concurred that the correct effective advisory guideline range was 295 to 353 months' imprisonment, argued that the enhancement for obstruction of justice was properly applied to Petitioner, stated that no motion for downward departure would be filed due to Petitioner's flight for 2.5 years, acknowledged that Petitioner barely qualified for his acceptance of responsibility reduction, and requested a sentence at the bottom of the guideline range. [Crim Doc. 411].

Petitioner, through counsel, filed a notice of objections to the PSR, objecting to the two-point enhancement for obstruction of justice for avoiding arrest for 30 months. [Crim. Doc. 403]. Petitioner, through counsel, also filed a sentencing memorandum, requesting a sentence of 180 months, the mandatory minimum sentence, based on his low prior criminal

history, his advanced age and health condition, his positive change in lifestyle since he went on the run, and his assistance with the government in setting up a dangerous cartel member. [Crim. Doc. 407].

On August 1, 2019, the Court sentenced Petitioner to a total of 240 months' imprisonment and then five years of supervised release. [Crim. Doc. 416]. Petitioner did not file a direct appeal, but on August 13, 2020, he filed this timely § 2255 motion.

## II.    STANDARD OF REVIEW

Under § 2255(a), a federal prisoner may move to vacate, set aside, or correct his judgment of conviction and sentence if he claims that the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). As a threshold standard, to obtain post-conviction relief under § 2255, the motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A movant bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *See Reed v. Farley*, 512 U.S. 339, 353 (1994) (noting that the Petitioner had not shown that his ability to present a defense was prejudiced by the alleged constitutional error); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (addressing the harmless-error standard that

6

applies in habeas cases alleging constitutional error). To obtain collateral relief under § 2255, a movant must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). A movant must prove that he is entitled to relief by a preponderance of evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). A motion that merely states general conclusions of law, without substantiating the allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

Under Rule 8(a) of the Governing Rules, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to determine whether an evidentiary hearing is warranted. Rules Governing Section 2255 Proceedings, Rule 8(a). If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts." *Valentine*, 488 F.3d at 333 (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). The Court **FINDS** no need for an evidentiary hearing in the instant case.

## III. ANALYSIS

As an initial matter, Petitioner raises three main claims in this § 2255 motion: 1) prosecutorial misconduct, 2) in the alternative, ineffective assistance of counsel, and 3) that sentencing statute 18 U.S.C. § 3553(e) and sentencing guideline § 5K1.1 violate constitutional due process. [Doc. 1; Crim. Doc. 437]. The Court will first address Claim 3, then Claim 1, before addressing Claim 2, as Claim 2 is an alternative to Claim 1.

## A. Claim 3 - Constitutionality of 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1

### 1. *Collateral Attack Waiver*

When a defendant knowingly, intelligently, and voluntarily waives the right to collaterally attack his sentence, he is precluded from bringing such claims. *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001) (citing to *United States v. Fleming*, 239 F.3d 761, 763 (6th Cir. 2001). A waiver in a plea agreement is generally considered knowing and voluntary if a defendant testified that his guilty plea was not coerced and that he reviewed and understood the agreement terms. *Id*. An exception to the general rule exists if the collateral attack concerns the validity of the waiver itself. *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007). However, in situations where the § 2255 motion does not articulate a basis for attacking the validity of the waiver, the Sixth Circuit and lower courts within the Circuit have upheld collateral attack waivers if the waivers were knowing and voluntary. *Watson v. United States*, 165 F.3d at 486, 489 (6th Cir. 1999); *United States v. Eversole*, No. 6:05-cr-34, 2010 WL 420067, at *2, n.3 (E.D. Ky. Feb. 1, 2010).

In this case, Petitioner signed a Plea Agreement containing the following waiver provision: "[t]he defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two

8

exceptions: The defendant retains the right to file a §2255 motion as to (i) prosecutorial misconduct not known to the defendant by the time of the entry of the judgment and (ii) ineffective assistance of counsel." [Crim. Doc. 277, p. 20].

Petitioner does not challenge the validity of the actual waiver, suggest that he did not understand the waiver, or claim that he did not sign it voluntarily. Accordingly, because Petitioner is not attacking the validity of the plea itself, and because he expressly waived the right to collaterally attack his conviction except for claims of ineffective assistance of counsel and prosecutorial misconduct, Claim 3 is barred by the knowing and voluntary waiver contained in the binding Plea Agreement. *See Davila*, 258 F.3d at 451. Accordingly, Petitioner's Claim 3 will be **DENIED** as barred by his collateral attack waiver. However, as discussed below, this claim alternatively fails on the merits.

### 2. Merits

Petitioner primarily argues that "[t]he provisions of 18 U.S.C. § 3553(e) and the United States Sentencing Guidelines § 5K1.1 violate the basic principles of due process guaranteed by the United States Constitution by removing the Court's authority to reduce a sentence based on substantial assistance to authorities except upon motion of the Prosecutor." [Doc. 1, p. 20]. As discussed in more detail below, the decision to file a U.S.S.G. §5K1.1 motion for downward departure lies solely with the United States. Controlling precedent in the Sixth Circuit states that § 3553(e) and § 5K1.1 do not violate due process. The Supreme Court has held that the Constitution does not require individualized sentencing in non-capital cases. *See Lockett v. Ohio*, 438 U.S. 586, 602, 98 S.Ct. 2954, 2963-64 (1978). Further "sentencing is not inherently or exclusively a judicial

9

function," *Geraghty v. United States Parole Comm'n,* 719 F.2d 1199, 1211 (3rd Cir. 1983), *cert. denied,* 465 U.S. 1103 (1984), and "[d]ue process is not offended by a guideline that narrows the discretion of a sentencing court." *United States v. Grant*, 886 F.2d 1513, 1514 (8th Cir. 1989); *see also Mistretta v. United States,* 488 U.S. 361 (1989) (Congress permissibly limited judicial discretion in sentencing through the creation of the Sentencing Commission); *United States v. Levy*, 904 F.2d 1026, 1035 (6th Cir. 1990). *United States v. Gardner*, 931 F.2d 1097, 1099 (6th Cir. 1991) (finding that U.S.S.G. § 5K1.1 was promulgated in response to 18 U.S.C. § 3553 and are substantively identical for purposes of defendant's claim). Accordingly, Petitioner's Claim 3 will be **DENIED** as barred by his collateral attack waiver.

### B. Claim 1 – Prosecutorial Misconduct Claims

With the exception of a claim of ineffective assistance of counsel, a defendant procedurally defaults a claim by failing to raise it on direct review. *See Bousley v. United States,* 523 U.S. 614, 621 (1998). Here, Petitioner did not appeal his conviction or sentence and only Claim 2 contains any reference to alleged ineffective performance on the part of his attorney. A procedurally defaulted claim may only be raised in a § 2255 motion if the petitioner can first demonstrate either (1) "cause" to excuse his failure to raise the claim previously and actual "prejudice" resulting from the alleged violation, or (2) "actual innocence." *Id.* at 622, 118 S.Ct. at 1611; *Peveler v. United States,* 269 F.3d 693, 698-700 (6th Cir. 2001). Petitioner has not attempted to demonstrate his "actual innocence" nor cause for failing to raise these grounds on appeal. Accordingly, Petitioner's Claim 1 in its entirety will be **DENIED** as procedurally defaulted. Nevertheless, the Court will address

the merits of Petitioner's claims in full because Petitioner would not be entitled to relief on his claims even if they had not been procedurally defaulted. Petitioner raises five claims of prosecutorial misconduct which the Court will address in turn.

### 1. *Breach of Contract*

Traditional principles of contract law govern the interpretation and enforcement of plea agreements. *United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002). Because of the constitutional and supervisory concerns involved, however, courts "hold[ ] the government to a greater degree of responsibility than the defendant (or possibly than ... either of the parties to commercial contracts) for imprecisions or ambiguities in the plea agreement[ ]." *United States v. Harris*, 473 F.3d 222, 225 (6th Cir. 2006) (quoting *United States v. Johnson*, 979 F.2d 396, 399 (6th Cir. 1992)) (first alteration in original).

In his Reply, Petitioner emphasizes that the plea agreement should be treated as a contract but does not seem to acknowledge the "four corners of the document" principle fundamental to contract law. *See* [Doc. 26]. Here, the Amended Plea Agreement specifically states that it constituted the "full and complete agreement and understanding between the parties concerning the defendant's guilty plea….and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after [the] agreement, are null and void." [Crim. Doc. 392, pp. 11-12]. Petitioner may not use an affidavit to prove that a plea agreement says something other than what it unambiguously appears to say. *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986).

Where, as here, the Court has followed the procedures required by Rule 11 of the Federal Rules of Criminal Procedure in considering and accepting Petitioner's guilty plea,

the plea agreement "consists of the terms revealed in open court," unless there are "extraordinary circumstances, or some explanation of why [a] defendant did not reveal other terms, at least when specifically asked to do so by the court." *Id.* This is so in part because a court cannot "properly administer a plea agreement if it consists of secret terms known only to the parties." *Id.* Petitioner's Amended Plea Agreement made no mention of an agreement between Petitioner and the Task Force for a reduced sentence. [*See* Crim. Doc. 392].

Once a plea agreement has been interpreted, the party asserting a breach bears the burden of proving the breach occurred. *United States v. Harris,* 473 F.3d 222, 225 (6th Cir. 2006). Petitioner's Amended Plea Agreement never mentions § 5K1.1, § 3553(e), or any kind of substantial-assistance motion at all [*see* Crim. Doc. 392], and "no case stands for the proposition that the language in [the] plea agreement—which fails to mention a [departure] motion at all—binds the government to recommend a departure." *United States v. Matthews*, 477 Fed. App'x. 371, 374 (6th Cir. 2012) (quoting *United States v. Ricks*, 398 Fed. App'x. 135, 138 (6th Cir. 2010)) (first alteration in original). Petitioner's arguments that his Plea Agreement is an invalid contract of adhesion are not persuasive as many circuits, including the Sixth Circuit, have determined that waivers of rights to appeal are not unenforceable as contracts of adhesion. *See United States v. Yoon,* 398 F.3d 802, 808 (6th Cir. 2005), *cert. denied,* 126 S.Ct. 548 (2005); *see also United States v. Robison*, 455 F.3d 602, 610-11 (6th Cir. 2006).

12

Accordingly, the Court finds that there was no breach of contract by the Government and this claim of prosecutorial misconduct will be **DENIED**.

### 2. *Failure to File a Motion for Downward Departure Based on Substantial Assistance* !

The government's decision not to pursue a § 5K1.1 motion cannot be reviewed absent proof the government was motivated by unconstitutional considerations when it refused to file the substantial assistance motion. *United States v. Moore,* 225 F.3d 637, 641 (6th Cir. 2000); *Wade v. United States,* 504 U.S. 181, 185–86 (1992) (refusal to make a motion for a downward departure under U.S.S.G. § 5K1.1). "The government's refusal to file such a motion may not be reviewed by a court for bad faith." *Moore,* 225 F.3d at 641. As Petitioner as not shown, nor even alleged, an unconstitutional motivation for the United States' decision to not file a §5K1.1 motion, Petitioner is not entitled to relief as to this claim and it will be **DENIED**.

### 3. *Failure to Disclose Substantial and Material Evidence*

Petitioner alleges that the United States failed to disclose or fully disclose *Brady* material, specifically an alleged agreement with the Task Force that he would receive a reduced sentence based on his cooperation; that Petitioner had fulfilled the terms of said agreement; and that an additional 27 defendants, including "Flaco," were "likely arrested and convicted due at least in part to [Petitioner]'s cooperation and assistance." [Doc. 1, Ex. 1, p. 9]. The United States responds that there was no authorized cooperation agreement, so the Government was not at fault for not turning over evidence that does not exist, and Petitioner's limited cooperation did not contribute to his supplier's arrest or conviction, let

alone 27 other defendants' convictions, as the "Flaco" to which Petitioner refers was a low-level dealer out of Tennessee, and not Petitioner's supplier "Flaco" who is affiliated with a Mexican drug cartel out of Atlanta, Georgia.[3] [Doc. 17].

To prevail on a *Brady* claim, Petitioner must show: (1) the existence of exculpatory or impeaching evidence favorable to the accused; (2) the suppression of the evidence by the prosecution; and (3) ensuing prejudice to the defense. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). The *Brady* rule "only applies to evidence that was known to the prosecution, but unknown to the defense, at the time of trial." *Apanovitch v. Houk,* 466 F.3d 460, 474 (6th Cir. 2006). "No *Brady* violation exists where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information," *United States v. Clark,* 928 F.2d 733, 738 (6th Cir. 1991). "*Brady* clearly does not impose an affirmative duty upon the government to take action to discover information which it does not possess." *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007).

First, the facts in the alleged cooperation agreement would certainly have been known by Petitioner before his guilty plea and sentencing. Second, the declaration by Lawrence Riddle states that he had no direct contact with anyone on the prosecution team in Petitioner's case, let alone that he was authorized to enter into a cooperation agreement on behalf of the United States Attorney's Office. *See* [Doc. 4, Ex. 2]. Third, Petitioner has not shown prejudice resulting from any alleged failure to disclose *Brady* material as the

---

[3] While there is a factual dispute regarding whether the "Flaco" Petitioner refers to is different from his supplier "Flaco," the factual dispute is not material to the resolution of Petitioner's claims.

14

Court explicitly cited Petitioner's cooperation as a reason for varying downward from the guideline range sentence. [Crim. Doc. 417, p. 3]. Finally, Petitioner has not established that the United States ever exercised control of any cooperation agreement with Petitioner, nor has he established beyond bare assertion that his two weeks of cooperation before absconding for over two years actually contributed to the prosecution and conviction of 27 defendants, let alone his supplier. At most, Petitioner has shown that he assisted in the arrest of two of Flaco's men, but he was not available to testify or provide any other assistance in their convictions, nor in the convictions of any of his co-defendants. Accordingly, Petitioner is not entitled to relief as to this claim.

### 4. *Failure to Furnish the Court with all Relevant Information Regarding Substantial Assistance*

Petitioner argues that the Government failed to provide the Court will all relevant information regarding whether Petitioner had provided substantial assistance which resulted in an excessive sentence in violation of his constitutional due process rights. [Doc. 1, Ex. 1, p. 18]. The United States responds that this claim is a variation of Petitioner's prior *Brady* claim regarding nonexistent and false information and should be summarily rejected. [Doc. 17, p. 15].

The Court first notes that it seems like Petitioner is collaterally attacking his sentence as being excessive. However, as discussed above, Petitioner's voluntary collateral attack waiver in his Amended Plea Agreement bars him from doing so. To the extent that Petitioner is alleging that the United States withheld information, as discussed above, Petitioner has not established that United States committed a *Brady* violation. Further, a

review of the sentencing transcript [Crim. Doc. 431], the facts as laid out in the Amended Plea Agreement [Crim. Doc. 392], and the PSR [Crim. Doc. 400] shows that the United States spoke candidly to the Court about Petitioner's assistance. The Court varied downward from the advisory guidelines due, in part, to Petitioner's assistance. The record does not support Petitioner's assertion that the United States withheld information from the Court which resulted in prejudice to Petitioner in the form of an excessive sentence. As the Supreme Court has explained, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Accordingly, Petitioner is not entitled to relief as to this claim.

### 5. *Misrepresentation and Exaggeration Regarding Facts Relevant to Sentencing*

Petitioner's final claim of prosecutorial misconduct is that the United States made fifteen misrepresentations and exaggerations to the Court in its sentencing memorandum and at the sentencing hearing. [Doc. 1, Ex. 1, pp. 9-15, 18]. The United States responds that none of its statements are flagrantly improper and Petitioner's hyper-technical reading of the sentencing transcript "simply defies good common sense." [Doc. 17, pp. 15-16].

Generally, to determine whether a prosecutor engaged in misconduct, the Court considers "whether the prosecutor's conduct and remarks were improper." *United States v. Carter,* 236 F.3d 777, 783 (6th Cir. 2001). If the Court finds that the prosecutor's conduct or remarks were improper, the Court must then determine whether the improprieties were

16

flagrant such that a reversal is warranted. *Id.* In determining whether the prosecutor's conduct was flagrant the Court considers: "1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; 2) whether the conduct or remarks were isolated or extensive; 3) whether the remarks were deliberately or accidentally made; and 4) whether the evidence against the defendant was strong." *United States v. Modena,* 302 F.3d 626, 635 (6th Cir. 2002) (citing *Carter,* 236 F.3d at 783); *see also United States v. Monus,* 128 F.3d 376, 394 (6th Cir. 1997); *United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994). Flagrantly improper remarks by the prosecution warrant reversal. *United States v. Stover,* 474 F.3d 904, 915 (6th Cir. 2007). However, if the challenged remarks are not flagrant, reversal is warranted only "if proof of the defendant's guilt was not overwhelming, the defendant objected to the improper remarks, and the court failed to cure the error with an admonishment to the jury." *Stover,* 474 F.3d at 915 (internal citations and quotations omitted).

After carefully reviewing the alleged misstatements [Doc. 1, Ex, 1, pp. 9-15], the sentencing transcript [Crim. Doc. 431], and the United States' sentencing memorandum [Crim. Doc. 411], the Court does not find that the Prosecutor's statements were improper or misleading, let alone flagrantly improper. The context of the statements in the record simply does not support Petitioner's claims of prosecutorial misconduct as to any of the 15 alleged improper statements. Further, Petitioner has not established that the statements meet the requirements for reversal under the standard for non-flagrant statements. *Stover,* 474 F.3d at 915 (internal citations and quotations omitted). Petitioner pleaded guilty, thereby waiving his right to hold the Government to its burden of proof and

17

admitting that the evidence was sufficient to establish Petitioner's guilt. Petitioner also did not object to the Government's alleged improper remarks or statements at the time, and there was no jury for the Court to cure the error. Petitioner has not established that any remarks by the United States were improper such that reversal of his sentence is warranted. Accordingly, Petitioner is not entitled to relief as to this claim.

### 6. *Conclusion*

For the reasons articulated above, Petitioner's claims of prosecutorial misconduct, Claim 1, will be **DENIED** as procedurally defaulted and also on the merits.

### C. Claim 2 – Ineffective Assistance of Counsel

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. A criminal defendant's Sixth Amendment right to counsel necessarily implies the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard for proving ineffective assistance of counsel, a movant must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id*.

To prove deficient performance, the movant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id*. at 688. A movant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690.

18

The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). It is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690.

The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id*. at 687. The movant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" *Id*. at 703. Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Petitioner's argument fails at *Strickland's* first step. Petitioner's allegations of ineffective assistance of counsel are alternative arguments for three of his prosecutorial misconduct claims in Claim 1. [Doc. 1, Ex. 1, p. 19]. Specifically, Petitioner argues in the alternative for Claim 1 subsections 1, 2, and 5 (see above) that his counsel was ineffective for raising the arguments of prosecutorial misconduct regarding the Prosecutor's failure to move for downward departure based on substantial assistance and failing to object to the Prosecutors alleged misstatements and exaggerations. [*Id*.]. Because the Court has found Claim 1 to be meritless in its entirety, counsel cannot be deemed ineffective for not raising frivolous arguments. *Chapman v. United States*, 74 F. App'x 590, 593 (6th Cir. 2003). Further, Petitioner's counsel did argue that Petitioner's cooperation merited a lower

19

sentence in his sentencing memorandum and the Court did vary downward based on Petitioner's cooperation. *See* [Crim. Doc. 407, p. 3; Crim. Doc. 417, p. 3]. Counsel cannot be deemed ineffective for doing what Petitioner now claims he should have done.

Accordingly, Petitioner's Claim 2 will be **DENIED** as Petitioner has not established any ineffectiveness of counsel.

## IV. CONCLUSION

For the reasons above, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 437] will be **DENIED** and **DISMISSED**.

## V. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." *Id.* The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id.*

A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Slack*, 529 U.S. at 484. Having examined Petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of those claims was debatable or wrong. Therefore, the Court will **DENY** issuance of a certificate of appealability.

20

A separate judgment will enter.

**IT IS SO ORDERED**

ENTER:

s/ Leon Jordan
_____
United States District Judge